UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 6332

RECEIVED
AUG 0 8 2014
U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| SIDDHARTHA JHA, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, ) ) ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| vs. ) ) ) | **JURY TRIAL DEMANDED** |
| DANIEL OCH, DAVID WINDREICH, JOEL FRANK, ALLEN BUFFERD, J. BARRY GRISWELL, JEROME KENNEY and GEORGEANNE PROCTOR, ) ) ) ) ) | |
| Defendants, ) ) | |
| And ) ) | |
| OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, ) ) ) | |
| Nominal Party. ) | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Siddhartha Jha ("Plaintiff"), by his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

1.     Plaintiff brings this shareholder derivative action for the benefit of Nominal Defendant Och-Ziff Capital Management Group ("OZM" or the "Company") against the Company's Board of Directors (the "Board") and certain of its current officers (collectively the "Individual Defendants") and alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters.

1

2.       Defendants Daniel S. Och, David Winderich, Joel Frank, Allen Bufferd, J. Barry Griswell, Jerome Kenney and Georganne C. Proctor, each of whom is or was serving on the Company's well-compensated Board of Directors, collectively and individually, initiated and/or actively participated in a course of conduct that was designed to, and did:

       a.       Conceal the fact that Company management was improperly misrepresenting OZM's internal controls in order to allow a widespread scheme of overseas bribery, kickbacks and other behavior in violation of applicable federal and other laws, and, thereafter, cover-up and/or not disclose such wrong doing;

       b.       Fail to comply with, and thus violate, the books and records, and internal controls provisions of the Foreign Corrupt Practices Act (the "FCPA") and conceal such violations;

       c.       Fail to make timely and voluntary disclosure of OZM's violations to the Securities and Exchange Commission ("SEC") and the United State Department of Justice ("DOJ") in order to, *inter alia*, mitigate the reputational damage and ever declining market capitalization that the Company has now suffered;

       d.       Deceive the investing public, including the shareholders of OZM, regarding the Individual Defendants' management of the Company's operations through and including the date of this Complaint;

       e.       Fail in their most fundamental stewardship responsibilities owed to OZM by providing superficial and perfunctory services as directors;

       f.       Violate federal disclosure laws, causing the Company to be sued by defrauded investors or otherwise;

g.      Permit the expiration of statutes of limitation applicable to claims possessed by the Company without investigating such claims or obtaining agreements tolling the running of statutes of limitations; and

h.      Cause the issuance and dissemination of each and every of OZM's Form 8-K and Form 10-Q from February 9, 2012 to November 5, 2013, which were false and misleading.

3.      As a result of the above, OZM has become the subject of years-long investigations by the DOJ and the SEC arising from, *inter alia*, the payment of substantial bribes in violation of the FCPA.

4.      The Company has expended and will continue to expend significant resources and millions of dollars to address and resolve these investigations.  It is likely that OZM will be subjected to massive fines and penalties because of the underlying violations of applicable law and the failure to make timely voluntary disclosures of the wrongdoing.

5.      In addition to the foregoing, the Company has suffered substantial economic damages and damages to its reputation as a direct result of the wrongdoing alleged herein.

6.      This action charges the Individual Defendants with using their control over OZM and its corporate suffrage process in effectuating, and directly participating in or aiding and abetting violations of Sections 10(b) and 20(a) Securities Exchange Act of 1934 ("Exchange Act").  Plaintiff, on behalf of OZM, seeks to recover for the Company the damages caused and being currently caused to it by the Individual Defendants' wrongdoing.  This action seeks, as well, fundamental improvements in OZM's governance by the Board.

7.      This action also seeks the appointment of a Special Master to oversee and direct the Company's negotiations with the DOJ and the SEC with respect to the wrongdoing alleged

herein, because the Board and legal counsel, due to their respective conflicts of interest, cannot conduct such negotiations consistent with their duty of loyalty to OZM.

8.    Plaintiff believes that substantial additional evidentiary support exists for his allegations and will surface in this litigation after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00.   This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.    This Court also has jurisdiction over Plaintiff's claims asserted under the Sarbanes-Oxley Act of 2002 ("Sarbanes Oxley"), 15 U.S.C. Section 7243. This Court further has jurisdiction over this action pursuant to 28 U.S.C 1331 (federal question jurisdiction) insofar as this action arises under both Section 10(b) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. 78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Private Securities Litigation Reform Act, 15 U.S.C. 78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.   Prior to Congress having enacted an express provision for contribution under Section 21D of the Exchange Act, the United States Supreme Court recognized that a federal cause of action existed for contribution pursuant to Section 10(b) of the Exchange Act and Rule 10b-5. *See Musick, Peeler & Garrnett v. Employers Insurance of Wausau*, 508 U.S. 286 (1993). Thus, pursuant to federal statutory law and Supreme Court authority, this Court has original federal question jurisdiction over the Federal contribution claim alleged herein.

11.    This Court has supplemental jurisdiction over the pendant state law claims

4

asserted herein pursuant to 28 U.S.C. 1367(a) and over all other claims where, as here, they are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

12.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because nominal Defendant OZM conducts business and maintains operations and has a principal place of business located at 9 West 57th Street, 39th Floor, New York, NY 10019, which is located in this District.  A substantial part of the Defendants' wrongful conduct took place in this District and the Individual Defendants have received substantial compensation by engaging in numerous activities and conducting business in this District.

## THE PARTIES

*Plaintiff*

13.     Plaintiff has been a holder of Och-Ziff shares at all relevant times.  He is a citizen of Washington.

*Nominal Defendant*

14.     Nominal Defendant OZM is a corporation organized under the laws of the state of Delaware.  Its headquarters are located at 9 West 57th Street, 39th Floor, New York, NY 10019.

*Individual Defendants*

15.     Defendant Daniel S. Och ("Och"), is OZM's founder and serves as OZM's Chief Executive Officer, Chairman of the Board of Directors and the Partner Management Committee. Prior to founding OZM in 1994, he spent 11 years at Goldman, Sachs & Co.  According to OZM's April 3, 2014 Proxy Statement, Defendant Och owned or controlled 159,949,514 shares of Och-Ziff Operating Group A Units (the "Group A Units"), representing 51.9% of all shares of the Group A Units.  According to the Proxy, "executive managing directors and the Ziffs are

5

parties to an exchange agreement with Och-Ziff, our intermediate holding companies and each of the Och-Ziff Operating Group entities (the "Exchange Agreement"), under which each of our executive managing directors and the Ziffs is entitled to exchange its Och-Ziff Operating Group A Units for Class A Shares on a one-for-one basis, subject to exchange rate adjustments for splits, unit distributions and reclassifications and subject to vesting, minimum retained ownership requirements and transfer restrictions."   Defendant Och also holds 1,957,071 (1.1%) of Class A shares and all Class B shares (301,884,116).   Together, these shares give Och 64.3% of total voting power.

16.   Defendant David Windreich ("Windreich") is Head of U.S. and European Investing for OZM and a member of OZM's Board of Directors and Partner Management Committee.   Prior to joining Och-Ziff at its inception in 1994, He was a Vice President in the Equity Derivatives Department of Goldman, Sachs & Co.   According to OZM's April 3, 2014 Proxy Statement, Defendant Windreich owned or controlled 36,312,184 shares of Och-Ziff Operating Group A Units (the "Group A Units"), representing 12% of all shares of the Group A Units.   He also holds 400,670 of Class A shares.

17.   Defendant Joel Frank ("Frank") is OZM's Chief Financial Officer and Senior Chief Operating Officer and a member of the Board of Directors and Partner Management Committee.   Prior to joining Och-Ziff at its inception, he was with Rho Management Company, Inc. as its Chief Financial Officer from 1988 to 1994.   According to OZM's April 3, 2014 Proxy Statement, Defendant Frank owned or controlled 6,954,283 shares of Och-Ziff Operating Group A Units (the "Group A Units"), representing 2.3% of all shares of the Group A Units.

18.   Defendant Allan Bufferd ("Bufferd") joined the OZM Board in November 2007. He has been Treasurer Emeritus of the Massachusetts Institute of Technology ("MIT") since his

retirement in May 2006 as MIT's Treasurer and Chief Investment Officer. He is a Director and a member of the Audit, Nominating and Remuneration Committees of City of London Investment Management Group. From August 2006 until December 2009, he served as a Director of RAM Holdings Ltd., where he was a member of the Nominating and Corporate Governance Committee and the Risk Management Committee. Defendant Bufferd is a resident and citizen of Massachusetts.

19.     Defendant J. Barry Griswell ("Griswell") joined the OZM Board in June 2011. He is the former Chairman and Chief Executive Officer of Principal Financial Group, Inc., positions he held from 2002 to 2009 and 2000 to 2008, respectively. He remained the non-executive Chairman and a non-executive member of Principal Financial Group's Board of Directors from 2008 to 2009 and until 2010, respectively. Prior to joining Principal Financial Group in 1988, Mr. Griswell served as President and Chief Executive Officer of MetLife Marketing Corporation. Mr. Griswell has been a member of the Board of Directors of ING U.S., Inc. since 2013, where he is currently Chairman of the Compensation and Benefits Committee and a member of the Nominating and Governance and Audit Committees. Since 2004, he has been a member of the Board of Directors of Herman Miller, Inc., where he currently is Chair of the Compensation Committee and a member of the Executive Committee. Defendant Griswell is a resident and citizen of Iowa.

20.     Jerome Kenney ("Kenney") joined the OZM Board in November 2007. He currently serves as a senior advisor to BlackRock, an asset management firm. Previously, he was Vice Chairman and member of the Executive Client Coverage Group of Merrill Lynch & Co., Inc., currently the investment banking and wealth management division of Bank of America Corporation, positions he held from February 2002 to August 2008. He was previously a

member of the Board of Directors of Invesco Ltd., where he served on the Audit, Compensation

and Nominating and Corporate Governance Committees. He was also previously a member of

the Board of Directors of Freddie Mac (formerly known as Federal Home Loan Mortgage

Corporation), where he served on the Audit, Compensation and Human Resources Committees.

Defendant Kenney is a resident and citizen of New York.

21.     Georganne C. Proctor ("Proctor") joined the OZM Board in June 2011. She is the

former Chief Financial Officer of TIAA-CREF, a position she held from 2006 to 2010.  Since

2006, she has been a director of Redwood Trust, Inc., where she currently is Chair of the

Compensation Committee and a member of the Audit Committee.  Also, she has been a director

of SunEdison, Inc., since 2013, where she currently is a member of the Audit Committee and of

the Finance and Investment Committee.  Defendant Proctor is a resident and citizen of

California.

## SUBSTANTIVE ALLEGATIONS

22.     OZM is a publicly owned investment manager.  The Company provides

investment advisory services for its clients.  It invests in equity markets and in real estate across

the world, investing in alternative markets and employs quantitative and qualitative analysis to

make its investments.  The firm also manages a buyout fund, Och-Ziff Energy Fund.  Och-Ziff

Capital Management Group LLC was founded in 1994 and is based in New York, New York

with additional offices in London, United Kingdom; Hong Kong; Tokyo, Japan; Bangalore,

India; and Beijing, China.

*Materially Misleading Financial Statements*

23.     On February 9, 2012, the Individual Defendants caused the Company to issue a

press release and file with the SEC a Form 8-K, announcing OZM's financial and operating

results for the fourth quarter and full year ended December 31, 2011. For the fourth quarter, the net loss allocated to Class A Shareholders was $137 million, or $1.17 per diluted share, on revenues of $181.3 million, compared to a net loss allocated to Class A Shareholders of $22.8 million or $0.24 per diluted share on revenues of $568.7 million for the same period in the prior year. For the year, the net loss allocated to Class A Shareholders was $419 million or $4.07 per diluted share on revenues of $616.4 million, compared to a net loss allocated to Class A Shareholders of $294.4 million or $3.35 per diluted share on revenues of $924.5 million for the prior year.

24.     On February 27, 2012, the Individual Defendants caused the Company to file an annual report on Form 10-K with the SEC which was signed by defendants Och and Frank, that reiterated the Company's previously announced quarterly and year-end financial results and financial position. The Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by defendants Och and Frank stating that the financial information contained therein was accurate and disclosed any material changes to the Company's internal control over financial reporting. In addition, in the 10-K, the Individual Defendants caused the Company to state:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our results of operations or financial condition.

25.     Between February 9, 2012, and November 5, 2013, the Individual Defendants caused OZM to issue seven (7) press releases disclosing the Company's financial and operating results for the various fiscal quarters. In these releases, the Individual Defendants caused OZM to issue and disclose information concerning the financial health of the Company, including but not limited to, OZM's revenue and the net income or loss allocated to OZM shareholders on a

per diluted share basis for that reporting period, and as against the same period for the prior year.

26.     Following each and every financial and operating results press release the Individual Defendants caused the Company to issue, the Individual Defendants would thereafter cause OZM to file with the SEC on either Form 10-Q or Form 8-K a quarterly report attesting to the accuracy of the previously announced quarterly financial results and financial position of the Company. In each and every Form 10-Q the Individual Defendants caused the Company to file with the SEC between February 9, 2012, and November 5, 2013, the Company stated:

> The Company is not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our results of operations or financial condition.

27.     The statements referenced in ¶¶ 22-26 above were materially false and/or misleading because they misrepresented and failed to disclosed the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) the Company violated relevant anti-bribery laws by accepting an investment from the Libyan Investment Authority, a sovereign wealth fund; (ii) the Company loaned $234 million to help finance two ventures in the Democratic Republic of Congo in violation of the FCPA; (iii) beginning in 2011, the Company received subpoenas from the SEC and the DOJ in connection with the transactions mentioned above; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

*The Truth Emerges*

28.     On February 2, 2014, the Wall Street Journal reported that the DOJ joined a widening investigation of banks, private-equity firms and hedge funds, including Och-Ziff, regarding possible violations of antibribery laws in their dealings with Libya's government-run investment fund. The article also stated that the criminal investigation by the DOJ was

proceeding alongside a civil probe by the SEC that began in 2011.

29.     Regarding the investigations in general, the article stated:

Authorities are examining investment deals made around the time of the financial
crisis and afterward, these people said.  In the years leading up to Libya's 2011
revolution, Western firms -- encouraged by the U.S. government -- raced to attract
investment money from the North African nation which was benefiting from oil
sales and recently had opened to foreign investment.  Investigators are trying to
determine whether the firms violated the Foreign Corrupt Practices Act, the
people said.  The 1977 law prohibits U.S. companies and companies listed on the
U.S. stock exchanges from paying bribes to foreign officials.  U.S. authorities
consider employees of state-owned investment funds, such as the Libyan
Investment Authority, to be foreign officials.

30.     Regarding OZM specifically, the article stated:

Prosecutors and regulators also are investigating transactions involving real-estate
investments in Libya, according to people familiar with the matter.  Among the
deals being scrutinized is a $120 million hotel project in which Och-Ziff had a
stake -- a joint venture involving U.S.-based InterContinental Hotels Group as
well as Libyan developer and the Libyan Investment Authority, to build a luxury
hotel in Tripoli -- according to people familiar with the probe.  The hotel which
was slated to open in the Libyan capital in 2010, would have 351 rooms and
"stunning views across the city and waterfront," according to a 2007 news release
from InterContinental, but construction stalled as fighting broke out in the
country.  It still hasn't been completed.

31.     Thus, despite repeatedly representing in quarterly and annual reports that the

Company was not subject to any "pending judicial, administrative or arbitration proceedings," in

fact, the Company has been under investigation by the SEC and the DOJ for potential violations

of anti-bribery laws and the FCPA since 2011.

32.     On this news, OZM stock fell $0.87 or 6.7%, to close at $12.08 on heavy trading

volume.

33.     On February 6, 2014, the Company issued a press release and filed a Form 8-K,

announcing its financial and operating results for the fourth quarter and full year ended

December 31, 2013.  For the fourth quarter, net income allocated to Class A Shareholders was

$95.8 million, or $1.12 per diluted share, on revenues of $1.1 billion, compared to net income

allocated to Class A Shareholders of $50.7 million or $0.45 per diluted share on revenues of

$724 million for the same period in the prior year. For the year, net income allocated to Class A

shareholders was $251.6 million, or $1.75 per diluted share on revenues of $1.8 billion,

compared to a net loss allocated to Class A Shareholders of $315.8 million or $2.21 per diluted

share on revenues of $1.2 billion for the prior year.

34.    On March 4, 2014, the Company filed a Notification of Late Filing on Form 12b-

25 with the SEC, stating as follows:

> Och-Ziff Capital Management Group LLC (the "Company") was unable to file its
> Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the
> "2013 Form 10-K") by March 3, 2014, without unreasonable effort or expense
> because it is working to resolve certain outstanding  comments that the Company
> recently received from the staff of the Securities and Exchange Commission (the
> "SEC") in connection with its periodic review of the Company's reports.
> Specifically, the Company is currently addressing the SEC's comments on the
> Company's accounting relating to (i) the non-consolidation of the collateralized
> loan obligation vehicles ("CLOs") it manages and (ii) deferral of certain income
> attributable to its consolidated funds.

35.    On March 14, 2014, the Company filed a Form 8-K with the SEC announcing that

some of their previously issued financial statements would be restated and should not be relied

upon. The Form 8-K, the Company stated as follows:

> Och-Ziff Capital Management Group LLC (the "Company") will restate certain of
> its previously issued financial statements in its Annual Report on Form 10-K for
> the year ended December 31, 2013, which the Company expects to file with the
> U.S. Securities and Exchange Commission ("SEC") on or before March 18, 2014.
> None of these changes will have any impact on the company's Economic Income,
> distributable Earnings and Distributable Earnings per Adjusted Class A Share,
> each as previously reported.

36.    On March 18, 2014, the Company filed an annual report on Form 10-K with the

SEC which was signed by defendants Och and Frank, and reiterated the Company's previously

announced quarterly and year-end financial results and financial position. In addition, the Form

10-K contained SOX certifications signed by defendants Och and Frank, stating that the financial

information contained in Form 10-K was accurate and disclosed any material changes to the

Company's internal control over financial reporting.

37.     Moreover, the Form 10-K included statements confirming the media reports that

the Company was in fact being investigated by the SEC and the DOJ since 2011:

> Beginning in 2011, and from time to time thereafter, we have received subpoenas
> from the SEC and requests for information from the U.S. Department of Justice
> (the "DOJ") in connection with an investigation involving the FCPA and related
> laws. The investigation concerns an investment by a foreign sovereign wealth
> fund in some of our funds in 2007 and investments by some of our funds, both
> directly and indirectly, in a number of companies in Africa. At this time, we are
> unable to determine how the investigation will be resolved and what impact, if
> any, it will have. An adverse outcome could have a material effect on our
> business, financial condition or results of operations.

38.     Although OZM did not disclose which foreign sovereign wealth fund investment

was under investigation, according to articles published by the WSJ, Bloomberg, and other news

sources, the investigation involved an investment by the Libyan Investment Authority. An

article published by Bloomberg News stated:

> The sovereign fund referenced by Och-Ziff in it filing is the Libyan Investment
> Authority, according to a person with knowledge of the matter who asked not to
> be identified because they weren't authorized to speak publicly. Regulators have
> been investigating how the LIA made investment decisions before the toppling of
> Muammar Qaddafi's regime in 2011.

39.     On the news, shares in OZM fell $0.49 or 3.5%, on heavy trading volume, to

close at $13.71 on March 19, 2014.

40.     On April 27, 2014, the WSJ published an article providing details about the OZM

investments in Africa under investigation by the SEC and the DOJ. The article stated that the

probe involved two loans totaling $234 million, to companies controlled by a controversial

mining executive, which helped finance two ventures in the Democratic Republic of Congo

involving properties that were the subject of ownership disputes. The article stated further that:

> The loans to companies . . . include one made in 2008 by an investment fund run jointly by Och-Ziff and South African Partners; another was made in 2010 by Och-Ziff itself, according to the documents, which include offshore corporate-registration filings, investment memos and emails. The loans were made under the oversight of Michael Cohen, then the head of Och-Ziff's London office and one of its most senior executives, the documents show. Mr. Cohen resigned last year after 15 years with the firm.

41.     On the news, shares in OZM-Ziff fell $1.28, or almost 10%, on heavy trading volume, to close at $11.65 on April 28, 2014.

42.     As a result of Defendants wrongful acts and omissions, and the precipitous decline in the market value of the company's securities, Plaintiff and other Class members have suffered significant losses and damages.

*OZM's Bribery and Illegal Kickbacks*

43.     Current and former OZM officers and other executives in OZM's London office caused the Company to make loans totaling $234 million, in violation of the FCPA, to help finance two ventures in the Democratic Republic of Congo involving properties that were the subject of ownership disputes. According to an April 27, 2014 Wall Street Journal ("WSJ") article, one loan was "made in 2008 by an investment fund run jointly by OZM and South African partners; another was made in 2010 by OZM itself."

44.     In addition, in or around 2011, the Individual Defendants caused the Company to accept investment from the Libyan Investment Authority, a sovereign wealth fund, thereby violating relevant anti-bribery laws[1].

45.     According to a February 3, 2014 WSJ article, the Individual Defendants caused the Company to participate in the above wrongs in order to "attract investment money from the

---

[1] The FCPA prohibits U.S. companies and companies listed on U.S. stock exchanges from paying bribes to foreign officials. U.S. authorities consider employees of state-owned investment funds, such as the Libyan Investment Authority, to be foreign officials.

14

North African nation, which was benefiting from oil sales and recently had opened to foreign investment," following the Libyan revolution.

46.     Under the supervision of defendants Och, Frank and the Board, OZM was advised and/or instructed not to voluntarily and timely disclose its FCPA violations. As a result, the penalties and fines flowing and/or probable to flow from such violations are likely to be much more severe than if OZM's management and legal counsel had voluntarily disclosed these violations of the FCPA and others which may yet be publicly known. Such wrongdoings subsequent to the original violations of law have been acquiesced in and concealed by each of the presently sitting members of the Board.

47.     In light of the foregoing conduct by the culpable executives subordinate to defendants Och, Windreich and Frank, and the passivity of the Audit Committee of OZM's Board, including defendants Bufferd, Kenney, Griswell and Proctor, the Company has been or will be required to pay substantial legal and other expenses. The Company has yet to disclose whether and/or the extent to which its legal counsel is participating in negotiations with the SEC and/or the DOJ. Further, as a result of these violations of the FCPA and other laws, the Company is likely to be penalized by the SEC, the DOJ, and other governmental agencies in amounts which cannot presently be estimated but which are likely to be substantial.

48.     By way of intentional avoidance of the full and fair disclosure of all material facts as required by the Exchange Act and the Board's duty of candor, the Company's Form 10-Q filed on March 18, 2014 merely states in the most general and obfuscatory language:

> In recent years, the DOJ and the SEC have devoted greater resources to
> enforcement of the FCPA. In addition, the United Kingdom has recently
> significantly expanded the reach of its anti-bribery laws. While we have
> developed and implemented policies and procedures designed to ensure strict
> compliance by us and our personnel with the FCPA, such policies and procedures
> may not be effective in all instances to prevent violations. Any determination that

we have violated the FCPA or other applicable anti-bribery laws could subject us to, among other things, civil and criminal penalties, material fines, profit disgorgement, injunctions on future conduct, securities litigation and a general loss of investor confidence, any one of which could adversely affect our business, financial condition or results of operations.

49.     Although the OZM Board has long known of such widespread violations of the

FCPA and the magnitude of the Company's financial exposure has long been known by OZM's

Board, as well as the wrongful failure to acknowledge these violations of law in order to mitigate

the Company's exposure, the Board and senior management continue to remain silent.  The

culpable executives and the responsible members of OZM's Board including defendants Och,

Windreich, Frank, Bufferd, Kenney, Griswell and Proctor should be required to pay personally

any fines or penalties that are sought against OZM as a result of their illegal conduct and its

concealment.  To the extent any statute of limitations applicable to the Company's FCPA

violations and/or cover-up that took place in connection therewith, were allowed to run,

precluding the Company from pursuing legal claims against culpable officers and directors, such

inaction was the result of the failure of the Board to even consider such claims, and each of them

in office has wasted OZM's assets and breached his or her fiduciary duty to the Company.

Similarly, to the extent that the Board gave no consideration to obtaining tolling agreements

from the culpable executives or directors, its members have similarly wasted OZM's assets and

breached their fiduciary duties, especially since the Company received no benefit whatsoever by

its failure to do so.

*False and Misleading SEC Filings*

50.     Between February 9, 2012, and November 5, 2013, the Individual Defendants

caused OZM to issue seven (7) press releases disclosing the Company's financial and operating

results for the various fiscal quarters.  In these releases, the Individual Defendants caused OZM

16

to issue and disclose information concerning the financial health of the Company, including but not limited to, OZM's revenue and the net income or loss allocated to OZM shareholders on a per diluted share basis for that reporting period, and as against the same period for the prior year.

51.     Following each and every financial and operating results press release the Individual Defendants caused the Company to issue,  the Individual Defendants would thereafter cause OZM to file with the SEC on either Form 10-Q or Form 8-K a quarterly report attesting to the accuracy of the previously announced quarterly financial results and financial position of the Company.  In each and every Form 10-Q the Individual Defendants caused the Company to file with the SEC between February 9, 2012, and November 5, 2013, the Company stated:

> The Company is not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our results of operations or financial condition.

52.     However, beginning on March 4, 2014, the Board caused the Company to file with the SEC Form's indicating that, as far back as 2011, OZM was under investigation by the SEC and the DOJ regarding violations of the FCPA concerning investments by the Libyan Investment Authority dating back to 2007.  It was also disclosed that the Company was also under investment with respect to loans OZM made to finance ventures in the Democratic Republic of Congo.

53.     As such, the Individual Defendants at all relevant times made various untrue statements of material facts and/or omitted material facts which were intended to, and did, (a) deceive the investing public, (b) artificially inflate and maintain the market price of OZM stock, and (c) cause Plaintiff and other members of the Class to purchase or otherwise acquire OZM stock at artificially inflated prices.

54.     In addition, every year in April, the Company holds an annual meeting for

shareholders.  Prior to these annual meetings, the Board causes the Company to issue and disseminate a Notice of Annual Meeting and Proxy Statement.  Most recently, the Board caused to be issued OZM's 2014 Proxy Statement on April 3, 2014, which was not materially different from previous proxy statements.

55.     Since February 9, 2012, OZM directors serving at all relevant times recommended that shareholders vote for each of the Board's nominees for election to the Board all the while omitting material facts bearing on these issues, and impacting materially as to how the shareholders of the Company would vote thereupon.

56.     Every Proxy Statement since 2012 contains essentially the same false recitations describing the supposed process by which director nominees were considered and evaluated, as well as short recitations of the jobs and directorships held by nominees, and membership listings of each of the committees of the Board in the prior year.

57.     However, in all of the Company's proxy statements since 2012, there is no description of crucial actions and/or material inactivity taken by the committees of the Board, the manner of the selection of nominees, or other vital information regarding the professional competence, accountability and effectiveness of each of OZM's directors, all of which could have been done in factual, non-pejorative language.

58.     Other than tracking each director's purchases and sales of OZM stock, the Board made no serious evaluation of director nominees or sitting directors, particularly in terms of their performance or effectiveness.

59.     The fact that OZM's 2012, 2013 and 2014 Proxy Statements read like every previous Proxy Statement is the most glaring example of the foregoing and other material omissions.

60.     As is disclosed in the 2012-2014 Proxy Statements, the OZM Board members receive lucrative compensation for serving as directors, as well as fees for their committee assignments, which in the aggregate, amount to hundreds of thousands of dollars per year.  Given the nature of the violative behavior now brought to light dating back to 2008, rather than conceal relevant information, the 2012-2014 Proxy Statements could and should have disclosed specific material facts relating to each nominee's performance and specific activities.  In this way, OZM's shareholders could make their own informed decisions, in the context of what the Board did disclose regarding its members, as to whether or not they warranted re-election to the Board.

61.     In the context of what was disclosed by the Board in the most recent Proxy Statement, such omissions of material fact were relevant and, indeed, critical to OZM shareholders voting upon the Board's director re-election and the credibility to be afforded to the Board's other recommendations.

62.     Specifically, the most recent Proxy Statement failed to disclose that the Company violated anti-bribery laws by accepting investment from the Libyan Investment Authority, and/or the loans made by OZM to the Democratic Republic of Congo in violation of the FCPA.

## INDIVIDUAL DEFENDANTS BREACHES OF OZM POLICIES AND GUIDELINES

63.     As directors of the Company, the Individual Defendants owed to the Company and its shareholders fiduciary duties of trust, due care, candor, good faith and loyalty.  Each of the Individual Defendants knew it was his or her fiduciary duty and responsibility to use his or her utmost ability to oversee management and administration of OZM's business and affairs, to ensure the Company complied with all of its legal obligations and operated in a diligent, honest and prudent manner, and to ensure policies, procedures, systems and internal controls are (and were) in place to prevent, detect and promptly terminate any unlawful corporate conduct or

unethical business practices such as those described above.[2]

64.    Notwithstanding such responsibilities, under the supervision of defendant Och, OZM's CEO, and defendants Frank and Windreich, OZM's CFO and Head of U.S. and European Investing, OZM violated federal law and did not adopt policies to ensure compliance with the FCPA.  In dereliction of their duties as directors, the Board has not found, named or disciplined any culpable persons for the above illegal activity.

65.    The Board's role in risk oversight is described in the 2014 Proxy as follows:

*Our Board is responsible for overseeing the effectiveness of management's overall risk management programs and processes and focuses on our overall risk management strategies.* Management is responsible for the day-to-day assessment and management of risk and the development and implementation of related mitigation procedures and processes. In exercising this responsibility, management regularly conducts risk assessments of our business and operations, including our funds' portfolios. Management's risk management processes cover the full scope of our operations, are global in nature and designed to identify and assess risks as well as determine appropriate ways to mitigate and manage risks. Further, our Risk Committee, which is comprised of members of senior management, oversees portfolio risk management processes. *We have developed an Enterprise Risk Management ("ERM") program. Our Chief Financial Officer works with the heads of significant business areas to assist in our identification, assessment and management of Company-wide risks.* The Company's Head of Internal Audit oversees the development and maintenance of an ERM report that is presented to our Board of Directors and Audit Committee.

Our Board has delegated to its committees specific risk oversight responsibilities as summarized below. The chairs of the committees report regularly to the Board on the areas of risk they are responsible for overseeing. Further, under our Corporate Governance Guidelines, each of our directors has full and free access to members of the Company's management and, in accordance with our organizational documents and agreements, may consult with the Company's management committees. The Board and its committees oversee risks associated with their respective principal areas of focus, summarized as follows:

*The Board as a whole has primary responsibility for overseeing strategic, financial and execution risks associated with the Company's operations and operating environment, including*: (i) significant changes in economic and

---

[2] The Board is tasked with responsibility for, among other things, "[r]eviewing compliance with applicable laws and regulations and adopting policies of corporate conduct to assure compliance with applicable laws and regulations and to assure maintenance of necessary accounting, financial, and other controls."

market conditions worldwide that may pose significant risk to our overall business; (ii) *major legal, regulatory and compliance matters that may present material risk to the Company's operations, plans, prospects or competitive position*; (iii) strategic and competitive developments; and (iv) senior management succession planning. The Board reviews information concerning these, the ERM program, and other relevant matters that are regularly presented by management, including our Risk Committee, our Head of Internal Audit, our Chief Legal and Compliance Officer, as well as each of the committees of the Board.

The Audit Committee has primary responsibility for addressing risks relating to financial matters, particularly financial reporting, accounting practices and policies, disclosure controls and procedures, internal control over financial reporting and significant tax, legal and regulatory compliance matters. The Audit Committee discusses the development and maintenance of the Company's ERM program and has been delegated primary responsibility for overseeing certain specific risks identified therein. The Company's Head of Internal Audit also reports independently to the Audit Committee.

The Compensation Committee has primary responsibility for risks and exposures associated with the Company's compensation policies, plans and practices, regarding both executive compensation and the compensation structure generally, including whether it provides appropriate incentives and alignment of interests between our executives and the holders of our Class A Shares. Management has reviewed the Company's compensation policies and practices for our executive managing directors and employees as they relate to our risk management and reported its findings to the Compensation Committee. The Compensation Committee has concluded that our compensation policies and practices, as described in the section below entitled "Compensation Discussion and Analysis," encourage and reward prudent business judgment and appropriate risk-taking over the long term and do not create incentives for risk-taking that are reasonably likely to pose material risks to the Company.

The Nominating, Corporate Governance and Conflicts Committee oversee risks associated with the independence of the Board and potential conflicts of interest.

66.     Notwithstanding such "oversight," the Board disregarded and/or concealed the payment of bribes abroad and issued materially false and misleading statements regarding the Company's illegal activities as opposed to timely and voluntarily acknowledging OZM's very serious wrongdoing.

67.     Significantly, the Board risk oversight section of the Company's yearly Proxy has had no substantive change since at least 2011.

68.     Pursuant to the Company's Audit Committee Charter, the Audit Committee's primary responsibilities are to assist the Board in its oversight of: (i) the integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the qualifications and independence of the Company's independent registered public accounting firm; and (iv) the performance of the Company's independent registered public accounting firm and our internal audit department.

69.     Notwithstanding the Audit Committee's primary responsibilities, it neither ensured the accuracy of the Company's financial reporting nor the Company's compliance with legal and regulatory requirements.

70.     Through their service on key Board committees, the non-employee members of the Board had supervisory responsibility for crucial front-line oversight in the areas of internal controls, legal and regulatory compliance, corporate citizenship, risk management, corporate governance and effectiveness.  Notwithstanding such responsibility, critical to the effective governance of the Company, these purportedly independent directors, spent insufficient time on OZM's business including, in particular, the consideration and evaluation of the Company's loans to and acceptance of monies from foreign officials and internal controls.  Service on these key committees as well as service as a director of the Company generally necessarily exposed these directors to knowledge of the individual instances, and overall pattern, of unlawful business practices reflected in this Complaint, as well as to knowledge of the Board's consistent ineffectiveness in assuring management's prevention of such unlawful business practices.

71.     The Board's Audit Committee was responsible at all relevant times for being the Board's "front line" in the oversight of enforcement of the Company's ERM and the Company's more generalized governance policies including the monitoring of all compliance programs

22

(including its anti-bribery standards) and reports from the Company's internal audit function concerning management improprieties such as the briberies and misuse of corporate assets as referred to above. The Audit Committee was required to report regularly to the full Board concerning its meetings and discussions and to review with the full Board all significant issues and concerns arising at its meetings. Therefore, the members of the Audit Committee received regular reports both of supposed compliance program activities and of unlawful and unethical business practices such as the briberies referred to herein, with respect to the Company and all of its operating subsidiaries, and reported these matters to the full Board. Similarly, each Audit Committee member had first hand knowledge that OZM concealed material facts with respect to such investigations and the likely consequence thereof from OZM shareholders, the investing public and in filings with the SEC.

72.     Each of the Individual Defendants, including each of the present members of the Board, knew that as directors of OZM, it was their fiduciary duty and responsibility to oversee management and assure that it acted effectively to prevent unlawful and unethical business practices, and to promptly cause the termination of any existing unlawful and unethical business practices such as those described. They also knew that it was a violation of their fiduciary duty of loyalty and good faith to permit the continuation of any such unlawful and unethical business practices, once they became aware of them. They were aware at all relevant times of the unlawful and unethical business practices alleged herein, including their cover-up to this day, yet permitted them to be continued, thus committing knowing breaches of their fiduciary duty of loyalty, candor and good faith. At all relevant times during each of their tenures on the Board, as a result of their service on the Board and on the committees described more fully in OZM's 2012-2014 Proxy Statements, their knowledge and expertise as alleged therein, the receipt by the

Board and those committees of regular, complete and accurate reports, the sustained and systematic nature if the wrongdoing over a year plus period, and as reflected in the Company's recent disclosures, each of the Board's members was aware of the unlawful business practices described herein, which conduct was not the result of a rogue employee or division, but instead, notwithstanding the ERM and generalized standards governing the Company, reflected Company-wide business philosophy, employed with consistent methods over an extended period of time, to attract North African investment money through the payment of bribes in violation of the FCPA and other similar laws.

73.     Thus, the Board, as a *de facto* matter of policy, manifested over and over again in the various bribery and kickback schemes alleged herein, consistently elevated revenues and profits over compliance with laws and regulations designed to protect the Company and its shareholders.  Upon information and belief, this strategy was well known to OZM's senior management and its Board, and was knowingly pursued despite their knowledge of its illegality and/or cover-up and the inevitable harm to OZM.  The Company's management, accompanied by Board acquiescence, knowingly made a calculated bet that any legal consequences from the bribery and/or acceptance of illegal foreign investment described herein would be insignificant when compared to the increased revenues, income and cash flows that were expected to result from their unlawful strategy and policies.  By knowingly or negligently permitting this strategy to continue, the Board adopted it as Company policy, and committed a sustained and systematic failure of compliance oversight in breach of its members' fiduciary duty of loyalty and good faith.

74.     Each of OZM's directors has acquiesced or actively participated in at least some of the wrongfully conduct described herein, including acquiescing in the cover-up of serious

wrongdoing, thereby breaching his or her fiduciary duty of loyalty and good faith. Such conduct

is not the product of valid exercise of business judgment, and constitutes a non0-exculpable

breach of fiduciary duty for which each director faces a substantial threat of personal liability.

Moreover, each of the Individual Defendants ignored numerous "red flags" which demonstrated

to them, *inter alia*, that OZM executives had engaged in an illegal bribery scheme during the

relevant time period and other illegal conduct described herein, the cover-up of which they

acquiesced. Their failure of oversight is demonstrated by the fact that, during the relevant time

period, they took no steps to disclose OZM's bribery promptly to the DOJ and SEC as they were

legally required to do or to otherwise mitigate the wrongdoing by "owning up to it," thus

lessening any likely penalties and fines.

76.    To the extent that any of the Individual Defendants, while serving on OZM's

Board, claim that they were not knowledgeable of the fact and/or truth of any of the claims of

illegal conduct or wrongdoing referred to herein that were violations of, *inter alia*, the FCPA,

each was informed of and acquiesced in managements material omissions with regard to the

Company's SEC filings during the relevant time period and the cover-up of such conduct though

and including the present, all of which has further damaged and will continue to damage OZM.

76.    In light of facts known to each of OZM's directors as a result of the reporting

system and procedures described above, the Board was on notice that widespread wrongdoing

had been taking place throughout the Company as described herein. The Board's bad faith

failure to act to investigate and/or prevent such wrongdoing reflected a systematic flaw in

OZM's corporate governance during the relevant time period and continuing into the present

time.

*Damages Suffered by OZM*

25

77.     The Board and senior management of OZM failed to act in accordance with any legitimate exercise of business judgment and consistently with the fiduciary duties owed by them to OZM and its shareholders.

78.     As a result of the Individual Defendants' breaches of fiduciary duties as described herein, OZM has suffered and will continue to suffer substantial harm to an extent not yet fully capable of determination.

79.     In addition, the Individual Defendants' breaches of their fiduciary duties to the Company have also exposed OZM to substantial injury in its reputation and corporate goodwill, as well as potential criminal and civil penalties.

80.     OZM's directors utterly failed to implement validly functioning reporting, control and information systems so that each Board member was timely informed of the wrongdoing alleged herein including, *inter alia*, OZM's serious violations of the FCPA.  In addition, it is clear that the OZM Board consciously or recklessly failed to monitor or oversee the Company's operations.

81.     The wrongdoing of each of the Individual Defendants described of herein was an essential link in the damages caused to OZM and its shareholders as a result thereof.

## REQUEST FOR APPOINMENT OF SPECIAL MASTER

82.     The Company has been he subject of serious investigations with respect to the wrongdoing alleged herein, including investigations by the SEC and DOJ.

83.     Because the Company's Board suffers massive conflicts of interest due to the personal culpability of Board members and their colleagues, the members of the Board are not capable of advancing solely the Company's interest and not their own.  Moreover, the legal counsel actions for OZM similarly have not acted exclusively in the Company's best interests in

dealing with the foregoing investigations, in connection with possible resolution of claims against OZM and in seeking the dismissal of pending shareholder lawsuits. Based upon the facts and circumstances described of herein, it is a virtual certainty that the members of the Board and their legal counsel as well as the Company's counsel, will not deal with this litigation objectively and solely in the Company's best interests.

84.    In order that the Company's best interests be addressed to the exclusion of all others, Plaintiff requests the appointment by the Court of a Special Master to oversee the Company's dealings with the DOJ, the SEC and any other agency's investigation of OZM in connection with the wrongdoing alleged herein and in connection with the Company's response to this litigation in order that the Company's best interests are put before all others and are not compromised by the defense of the Individual Defendants and/or material conflicts of interest on the part of their legal counsel. Should the Company's interests continue to be represented as they are at the present by conflicted counsel whose principal allegiance is to the Individual Defendants, OZM will be irreparably harmed.

## DEMAND FUTILITY

85.    Plaintiff brings this action derivatively in the right of and for the benefit OZM to redress injuries suffered and to be suffered by OZM as a direct result of the violations of law, breaches of fiduciary duty, corporate mismanagement, abuse of control, as well as the aiding and abetting thereof, by the Director Defendants. OZM is named as a nominal Defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court which it would not otherwise have

86.    Plaintiff will adequately and fairly represent the interests of OZM and its shareholders in enforcing and prosecuting their rights.

87.     Plaintiff owns OZM common stock and owned OZM common stock at all times relevant to the Defendants' wrongful course of conduct alleged herein.

88.     It would be futile to require Plaintiff to issue a demand to the Individual Defendants requesting them to take action against themselves and certain senior OZM executives for their intentional or reckless conduct as alleged herein.  Not only would this require them to investigate and bring claims against themselves for their own misconduct, but their actions, to date, prove conclusively that they will not take action.

89.     Plaintiff has not made any demand on OZM's Board of Directors prior to filing this lawsuit.  Such demand, as shown by the facts alleged herein, would be a futile and useless act.  Such demand is further excused because the wrongful conduct of the Defendants complained of herein is not subject to protection under the business judgment rule.

90.     Demanding that the Board investigate and act upon the wrongdoing would be futile, since all directors engaged in the alleged wrongdoing and therefore have interests adverse to performing a fair, unbiased investigation.  Moreover, the Individual Defendants have established, through their years' long obstinate refusal to disclose conduct to the Company's shareholders, that they have no willingness to bring their conduct to light.  Therefore, these Directors cannot exercise independent, objective judgment in deciding whether to vigorously litigate OZM's claims against them.

91.     In order to bring this action for breaching their fiduciary duties and engaging in other misconduct, the members of the OZM Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Corporation, who are their good friends and with whom they have entangling financial alliances, interests and

dependencies, which they would not do.  Therefore, the Individual Defendants would not be able to vigorously prosecute any such action.

92.     The members of the OZM Board of Directors receive benefits, stock options and other emoluments by virtue of their membership on the Board and their control of OZM.  For example, non-employee directors receive a grant of Class A Restricted Share Units with a value of $300,000, which grant vests in equal annual installments on each of the first, second and third anniversaries of the director's date of election to the Board, subject to the director's continued service on our Board. Incumbent independent directors receive annual equity-based and cash compensation. At the beginning of each year, each incumbent independent director receives a grant of Class A Restricted Share Units with a value of $100,000, which grant vests in equal annual installments on each of the first, second and third anniversaries of the date of grant. With respect to each vested Class A Restricted Share Unit, the independent director receives one Class A Share on or before the third business day following the independent director's departure from our Board of Directors. As of 2013, an annual cash retainer is paid to each incumbent independent director in the amount of $50,000, and the chairs of the committees of our Board receive additional annual cash retainers as follows: the Audit Committee chair receives. The Individual Defendants have thus benefited from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of control and the perquisites thereof, and are incapable of exercising independent objective judgment in deciding whether to bring this action. The Board members also have close personal and business ties with each other and are, consequently, interested parties and cannot in good faith exercise independent business judgment to determine whether to bring this action against themselves and one another.

29

93.     Despite their knowledge of the facts alleged herein, the Defendants intentionally allowed the Company to disseminate false and misleading information to the investing public without reasonably assuring themselves that the Company would comply with required procedures and otherwise comply with its legal requirements.

94.     Defendants undertook this course of conduct with intentional and/or reckless breach of their fiduciary duties because they were afraid that taking the drastic action that was necessary to correct and address the severe lack of any internal controls would: (a) harm the market price of OZM's stock; (b) result in the loss of goodwill in the investing community; and c) jeopardize their personal reputations and financial interests.

95.     Plaintiff has not made any demand on OZM to institute an action against the Defendants for their breach of fiduciary duties and other misconduct since such demand would be a futile and useless act for, *inter alia*, the following reasons:

a)      A majority of the OZM Board of Directors participated in, approved or recklessly disregarded the wrongs complained of herein, which could not have been an exercise of good faith business judgment.

b)      The acts which are complained of herein constitute violations of fiduciary duties owed to the Company and its shareholders and violations of law and these acts are incapable of ratification.

c)      In order to bring this suit, the Individual Defendants would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do.  These inter-related business and personal relationships have developed debilitating conflicts of interest which prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.

d)      Many of OZM's Board own substantial amounts of the Company stock and have personally profited from these wrongful acts.

e)      To bring an action against themselves would subject the Defendants to personal liability in the securities class action lawsuits pending, as well as additional liability   in future lawsuits that could result from such an action.

f)     OZM's officers and directors are protected against personal liability by a directors' and officers' liability insurance policy. They caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the shareholders of OZM. However, the directors' and officers' liability insurance policies covering Defendants contain provisions which eliminate coverage for any action brought directly by OZM against these Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if these directors were to sue themselves, no insurance protection would be provided for the derivative claims. Thus, this is a further reason why the OZM Board will not bring such a suit, for to do so would subject themselves and their colleagues and/or friends to a judgment of millions of dollars that would have to be paid from their individual assets alone. On the other hand, if the claims are brought derivatively, such insurance coverage will provide a basis for the Company to effectuate a recovery

96.    In addition to the above stated facts, demand is futile because:

a)     The Company's most recent Proxy Statement states that defendants Och, Windreich and Frank are not considered independent and, therefore, could not properly evaluate a demand on the Company. As such, demand is futile as to these three defendants.

b)     Defendants Och, Windreich and Frank continue to receive substantial compensation as a result of their employment with OZM and demand would be futile as they would not bring an action against the directors on the compensation committee or that would endanger the substantial compensation they receive.

## FIRST COUNT

### Breach of Fiduciary Duty and Waste of Corporate Assets

97.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

98.    The Individual Defendants all owed and/or owe fiduciary duties to OZM and its shareholders. By reason of their fiduciary relationships, the Individual Defendants specifically owed OZM the highest obligation of good faith and loyalty in the administration of the affairs of the Company, including the oversight of OZM's compliance with federal laws such as the FCPA.

31

Moreover, the Board had specific fiduciary duties as defined by the Company's key corporate governance documents and principles that, had they been discharged in accordance with the Board's obligations, would have necessarily prevented the misconduct and consequent harm to the Company alleged herein. The Individual Defendants *de facto* ignored and/or disregarded such governance documents and principles as set forth above.

99.    The Individual Defendants consciously violated their corporate responsibilities in at least the following ways: a) affirmatively and repeatedly declining to stop, prevent and ultimately make timely voluntary disclosure of OZM's illegal payment of bribes, and/or consciously covering up the wrongdoing when they became aware of it despite specific OZM policies to the contrary, and b) wasting enormous amounts of Company assets by authorizing management to make loans totaling hundreds of millions of dollars to ventures in the Democratic Republic of Congo. As a direct and proximate result of the Individual Defendants' conscious failure to perform their fiduciary obligations wand wastage of OZM assets, the Company has sustained and will sustain significant damages, not only monetarily, but also to its corporate image and goodwill.

100.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company in an amount which cannot presently be determined.

**SECOND COUNT**

**Aiding and Abetting the Board's Breaches of Fiduciary Duty**

101.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

102.    The Individual Defendants breach their fiduciary duties to OZM.

103.    Each Individual Defendant knew the Individual Defendants breached their

fiduciary duties of good faith and loyalty owed to OZM.

104.    Each Individual Defendant provided substantial assistance to the Individual Defendants' breaches of fiduciary duties to OZM by knowingly assisting and participating in their representations and omissions, and their breaches of fiduciary duty.

105.    As a result of the Individual Defendants' participation in breaches of fiduciary duties of the Individual Defendants, OZM has been damaged in an amount to be proven at trial.

106.    Plaintiff, on behalf of OZM, has no adequate remedy at law.

### THIRD COUNT

### Unjust Enrichment

107.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

108.    Each of the Individual Defendants who have been unjustly enriched by the wrongdoing set forth in this Complaint should repay the Company therefore together with their earnings thereupon.

### FOURTH COUNT

### Contribution and Indemnification

109.    Plaintiff asserts this claim on behalf of OZM against the Individual Defendants.

110.    Plaintiff re-alleges all of the above allegations as though they were more fully set forth herein at length.

111.    OZM is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein which give rise to the Individual Defendants' liability to OZM.

112.    OZM alleged liability on account of the wrongful acts and practices and related

misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and OZM is entitled to contribution and indemnification from each of the Individual Defendants in connection with all such claims that have been, are or may in the future be asserted against OZM by virtue of the Individual Defendants' misconduct, including, but not limited to, attorneys' fees and costs for defending the FCPA, and federal securities litigation matters filed against OZM.

113.    Plaintiff, on behalf of OZM, has no adequate remedy at law.

## FIFTH COUNT

### Gross Mismanagement

114.    Plaintiff asserts this claim on behalf of OZM against the Individual Defendants.

115.    Plaintiff re-alleges all of the above allegations as though they were more fully set forth herein at length.

116.    As a result of the above, the Defendants failed to prudently manage the assets and business of OZM.

117.    As a direct and proximate cause of this gross mismanagement, OZM has sustained significant damages.

118.    As a result of the misconduct and breaches of duties alleged herein the Defendants are liable to the Company.

119.    Plaintiff, on behalf of OZM, has no adequate remedy at law.

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Appointing a Special Master to oversee and direct 1) the Company's negotiations with the DOJ and the SEC with respect to the wrongdoing alleged herein; and 2) to act in place of OZM's Board in connection with the Company's response to this or any other pending

litigation in which one or more of the presently-sitting Board members of OZM is named as a defendant;

B.      Determining that OZM's 2012-2014 Proxy Statements, Form 8-Ks and/or Form 10-Ks are false and misleading in violation of the Exchange Act and the Board's duty of candor and declaring them each null and void and ordering a new Annual Meeting of Shareholders or special meeting of shareholders after the preparation and distribution of a replacement proxy statement prepared in compliance with all federal disclosure laws and rules;

C.      Declaring that the current OZM directors named as defendants herein have breached their fiduciary duties as alleged herein causing substantial damages to OZM;

D.      Requiring the Individual Defendants to pay the Company the amounts by which it has been damaged by reason of the conduct complained of herein;

E.      Requiring the Individual Defendant to repay the Company to the extent that they have been unjustly enriched by their wrongful conduct as described herein together with their earnings upon such amounts;

F.      Ordering the Board to take all necessary actions to reform and improve OZM's corporate governance, compliance and internal controls procedures for the purpose not only of preventing a recurrence of the failures detailed above, but to optimize such procedures in light of relevant and current best practices;

G.      Ordering the Board to appoint a Chief Compliance Officer with specific responsibility for overseeing and enforcing OZM's compliance with the FCPA, the Sarbanes-Oxley Act, and applicable federal securities laws;

H.      Awarding Plaintiff and his counsel reasonable attorneys' fees, expert fees and other reasonable costs and expenses; and

I.    Granting such other and further relief as the Court may deem just and proper.

Dated:  August 5, 2014                              Respectfully submitted,

                                                    BRODSKY & SMITH, LLC
                                                    By:
                                                    Evan J. Smith, Esquire
                                                    240 Mineola Boulevard
                                                    Mineola, NY 11501
                                                    Phone: 516-741-4799
                                                    Fax: 516-741-0626
                                                    Email: esmith@brodsky-smith.com